IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE:                          *
                                *
    FRED W. ALLNUTT, SR.,       *   Case No. 92-5-7401-JS
    Debtor.                     *
                                *

AFFIDAVIT

I, Melvin E. Casby, Accountant, MBA, with Kemplin Group, a public accounting and consulting firm, swear and affirm that the following statements and/or reports, containing facts which I know of by personal first hand knowledge are true and accurately reported in the attached report entitled Allnutt Estate, Independent Accounting Analysis and dated January 31, 1995.

1. The accuracy and validity of my attached report of my participation in the accounting analysis of the Allnutt Estate conducted January 26, 1995 at the offices of C.W. Amos.

2. All correspondence preceding January 4, 1995 meeting with trustee, C.W. Amos representatives and Kemplin Group representatives.

3. January 4, 1995 letter to Friedman requesting specific documentation to support Kemplin Group analysis of estate accounting.

4. January 26, 1995 on-site meeting at the offices of C.W. Amos conducting accounting analysis of the financial records of the Allnutt

**Exhibit A – 4 pages**

Estate and the following findings:

(1) Great Plains accounting system used by J.F.C Excavating prior to seizure was discontinued by trustee as of April 30, 1993 and a new system (Libra) was procured and implemented effective May 1, 1993.

(2) C.W. Amos ceased using Libra accounting system effective December 31, 1993. C.W. Amos did not use an automated accounting software system from January 1, 1994 until January 26, 1995, time of Kemplin Group accounting analysis. When I asked Mr. Atkinson, of Amos to provide a 1994 general ledger, he said, "we closed 1993 with Libra and did not maintain its general ledger." I then asked for the manual general ledger that replaced the automated general ledger, at which Mr. Atkinson responded, "We did not maintain a general ledger in any form after December 31, 1993." I then asked how then could he prepare financial statements, and he responded, "we use the accounts receivable cards and subsidiary journals."

(3) Trustee provided list of 8 accounts receivable that had been written off that totaled $597,084. The posting of only two of the accounts could be verified on the accounts receivable cards provided. They were Ratrie Shipquarters for $178,659 in June 1994 and New Panorana Development Corporation for $31,813 in September 1994. Leaving Pulte for $57,084 in November 1993; Bituminous Construction (Hanover II project) for $27,068 in January 1994; Bituminous

Construction (Hanover III project) for $15,376 and $1,293 in January 1994; Heritage Heights Limited Partnership for $46,374 in September 1994; Olney Land Limited Partnership for $165,584 identified and $79,403 that was not identified in September 1994; and Kennard Warfield for $70,596 in December 1994 totalling $462,778, or 77.5% of reported write-offs were unable to be verified to and supported by the accounts receivable cards provided. Additionally, while searching the accounts receivable cards, I discovered an unidentified $42,430 credit posted to Lou Spicer on the Fallstone project indicating that not all write-offs in excess of $10,000 was provided to us for review as indicated by trustee.

(4) Also while reviewing the accounts receivable cards I discovered a $2,783.50 credit issued to Valley Enterprises with the explanation of duplicate billings. However, there were only two debits posted to the account receivable card totalling $2,783.50 making it impossible to involve duplicate billings unless another receivable record was kept and not provided for review.

(5) Requested and approved documentation was not present at the January 26, 1995 meeting for review and analysis.

(6) Source documents for adjustments, write-offs, and payables/receivables off-sets were not available to verify accuracy and correctness of adjustments, write-offs and off-sets.

(7) Income tax returns have not been filed by the trustee.

(8) Accounting policies and procedures for the Allnutt Estate fail to conform to standards required of the Generally Accepted Accounting Principals.

*I certify, under Penalty of Perjury, that the statements made herein are true and correct, to the best of my knowledge, information and belief.*

March 27, 1995

Melvin E. Casby
Director, Accounting Operations
Kemplin Group

Subscribed and sworn to before me this 27th day of March 19 95

(SIGNATURE IN INK OF PERSON ADMINISTERING OATH)

SEAL

July 1, 1996
(MY COMMISSION EXPIRES)

```
------------------------------------------------------------
------------------------------------------------------------
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE:                          *
                                *
    FRED W. ALLNUTT, SR.,       *      Case No. 92-5-7401-JS
    Debtor.                     *

### AFFIDAVIT

I, Wayne I. Greenfeld, B.S. in Accounting (Major in Public Accounting) and automated accounting systems specialist, hereby testify to the following:

1. The accuracy and validity of my attached report of my participation in the accounting analysis of the Allnutt Estate conducted January 26, 1995 at the offices of C.W. Amos.

2. Upon request, Mr. Atkinson indicated that all computer related activity ceased effective 12/31/93 and if any other reports were run, they would have been used via diskette, then discarded. He also indicated that he was unable to provide us any standard accounting records for activity since 1/1/94, stating that some journals may exist but the A/R cards are the main source of the accounting transactions and that he would initiate "swap" transactions regularly via telephone calls from Mr. Friedman.

**Exhibit B – 2 pages**

3. Melvin Casby requested that I trace several of the items shown on the 1/17/95 Piper & Marbury letter listing all Accounts Receivable write-offs greater than $10,000. I documented and reported the following findings:

Item #1. Pulte re: Christie $57,865 - Since the A/R card doesn't contain a general ledger reference, and the general ledger consists of undated, summary CR (Cash Receipt) entries, I was unable to trace the transaction to the general ledger.

I was unable to trace the rest of the items since the write-offs occurred after 12/31/93, the last report date of general ledger activity provided to me.

*I certify, under Penalty of Perjury, that the statements made herein are true and correct, to the best of my knowledge, information and belief.*

March 27, 1995

Wayne I. Greenfeld

Subscribed and sworn to before me this 27th day of March 19 95

SEAL

(SIGNATURE IN INK OF PERSON ADMINISTERING OATH)

July 1 - 1996

( MY COMMISSION EXPIRES)

# C.W. Amos & Company, LLC

Certified Public Accountants
Business Consultants

August 28, 1997

Mr. Fred W. Allnutt, Sr., President
JFC Excavating, Inc.
10030 Baltimore National Pike - D130
Suite 605
Ellicott City, MD  21042

RE:   Fred W. Allnutt, Sr.

Dear Mr. Allnutt:

In response to your July 31, 1997 facsimile, please find enclosed our "Analysis of JFC Excavating, Inc.'s Sales and Receipts" which was provided to the representative of the Office of the U.S. Trustee ("U.S. Trustee"). In addition, prior to the U.S. Trustee's visit, we gathered and organized documents requested in his letter dated March 27, 1997. Further, during the U.S. Trustee's visit we provided additional documents and answers to questions. No log was kept of the requests and questions to which we researched and responded.

I apologize for not getting these documents to you sooner. Even though the Trustee and I did discuss the request and we did compile the documents for the Trustee's review promptly, due to first Mr. Friedman's vacation schedule and then mine (I only returned on Monday), delivery has been delayed.

If you have any questions, please call.

Sincerely,

*[signature]*

Neil H. Demchick, Member
C. W. Amos & Company, LLC

NHD/mdw

Enclosure

cc:    Client Correspondence File

**Exhibit C – 2 pages**

2 North Charles Street, Baltimore, MD 21201-3760    410/727-5341    Fax 410/727-1936

Draft

## Analysis of JFC Excavating's Sales and Receipts

| Report period (a) | (A) Beginning Accounts Receivable (F) | (B) Sales Operating Report (b) | (C) Cash Receipts Applied to A/R (b) | (D) AP AR Swaps (b) | (E) Other (b) | (F) Ending Accounts Receivable (A)+(B)+(C)+(D)+(E) | (G) Accounts Receivable Per Report (a) | (H) Difference (F)-(G) |
|---|---|---|---|---|---|---|---|---|
| 10/9 to 12/31/92 | $2,531,942.00 (c) | $1,563,196.00 | ($1,426,890.00) | ($136,219.00) | ($7,603.00) | $2,524,426.00 | $2,524,426.00 | $0.00 |
| 1/1 to 4/30/93 | 2,524,426.00 | 1,986,514.00 | (2,159,133.00) | (161,100.00) | (2,342.00) | 2,188,365.00 | 2,188,365.00 | 0.00 |
| 5/1 to 7/31/93 | 2,188,365.00 | 2,944,091.00 | (1,725,420.00) | (754,958.00) | 2,482.00 | 2,654,560.00 | 2,654,560.00 | 0.00 |
| 8/1 to 10/31/93 | 2,654,560.00 | 2,228,742.00 | (1,441,055.00) | (362,584.00) | (922.00) | 3,078,741.00 | 3,078,741.00 | 0.00 |
| 11/1 to 12/31/93 | 3,078,741.00 | 78,312.00 | (410,154.00) | (218,641.00) | 25.00 | 2,528,283.00 | 2,528,283.00 | 0.00 |
| 1/1 to 1/31/94 | 2,528,283.00 | (61,482.00) | (455,250.00) | (53,297.00) | 543.00 | 1,958,797.00 | 1,958,797.00 | 0.00 |
| 2/1 to 2/28/94 | 1,958,797.00 | (17,435.00) | (21,965.00) | (117,408.00) | 0.00 | 1,801,989.00 | 1,801,989.00 | 0.00 |
| 3/1 to 3/31/94 | 1,801,989.00 | (19,947.00) | (11,974.00) | 0.00 | 1.00 | 1,770,069.00 | 1,770,069.00 | 0.00 |
| 4/1 to 4/30/94 | 1,770,069.00 | (8,532.00) | (19,860.00) | 0.00 | (1.00) | 1,741,676.00 | 1,741,676.00 | 0.00 |
| 5/1 to 5/31/94 | 1,741,676.00 | (10,342.00) | (17,732.00) | (10,368.00) | 0.00 | 1,703,234.00 | 1,703,234.00 | 0.00 |
| 6/1 to 6/30/94 | 1,703,234.00 | (183,362.00) | (65,711.00) | 0.00 | 1.00 | 1,454,162.00 | 1,454,162.00 | 0.00 |
| 7/1 to 7/31/94 | 1,454,162.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,454,162.00 | 1,454,162.00 | 0.00 |
| 8/1 to 8/31/94 | 1,454,162.00 | 0.00 | (5,200.00) | 0.00 | 0.00 | 1,448,962.00 | 1,448,962.00 | 0.00 |
| 9/1 to 9/30/94 | 1,448,962.00 | (276,869.00) | (160,922.00) | 0.00 | 0.00 | 1,011,171.00 | 1,011,171.00 | 0.00 |
| 10/1 to 10/31/94 | 1,011,171.00 | (12.00) | (14,501.00) | 0.00 | 0.00 | 996,658.00 | 996,658.00 | 0.00 |
| 11/1 to 11/30/94 | 996,658.00 | (3,452.00) | (7,814.00) | (3,675.00) | 1.00 | 981,718.00 | 981,718.00 | 0.00 |
| 12/1 to 12/31/94 | 981,718.00 | (72,096.00) | (80,000.00) | 0.00 | (1.00) | 829,621.00 | 829,621.00 | 0.00 |
| 1/1 to 1/31/95 | 829,621.00 | (2,660.00) | (11,066.00) | 0.00 | 0.00 | 815,895.00 | 815,895.00 | 0.00 |
| 2/1 to 2/28/95 | 815,895.00 | 0.00 | (9,030.00) | 0.00 | 0.00 | 806,865.00 | 806,865.00 | 0.00 |
| 3/1 to 3/31/95 | 806,865.00 | | (9,250.00) | 0.00 | 0.00 | 797,615.00 | 797,615.00 | 0.00 |
| TOTALS | | $8,144,666.00 | ($8,052,927.00) | ($1,818,250.00) | ($7,816.00) | $797,615.00 | $797,615.00 | $0.00 |

(a) - Source: Monthly Operating Reports filed by Trustee
(b) - Source: "Fred W. Allnutt Sr. Change in Accounts Receivable Analysis" prepared by C.W. Amos and Company LLC
(c) - Source: October 9, 1992 beginning balance sheet prepared by C.W. Amos and Company LLC

Prepared By C.W. Amos & Co. LLC

04/29/97 08:21 AM

RECONC.WK4